UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ALBERTO SURIA DEL MORAL, et al.,

    Plaintiffs,

v.

METROPOLITAN BUS AUTHORITY OF PUERTO RICO, et al.

    Defendants.

Civil No. 3:14-CV-01754 (JAF)

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**I.**

**Background**

On October 9, 2014, plaintiffs Alberto Suria Del Moral ("Del Moral") and his wife Wanda Suarez Maeso ("Suarez"), who are citizens of the Commonwealth of Virginia, brought this diversity action by filing a complaint that alleges against defendants Metropolitan Bus Authority of Puerto Rico ("AMA"), MAPFRE PRAICO Insurance Company ("MAPFRE"), and AMA driver Carmen Ortiz ("Ortiz"), who are citizens of the Commonwealth of Puerto Rico, tort claims under Article 1802 of the Puerto Rico Civil Code.[1] (ECF No. 1.) The complaint invokes the court's diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1 at 1.) Specifically, plaintiffs allege that, on March 19, 2012, Ortiz, by suddenly accelerating the AMA "Llame y Viaje" (in English, "Call and Ride")[2]

---

[1] Plaintiffs had also named the Integrated Transport Authority of Puerto Rico as a co-defendant, but, early in the litigation, the court dismissed the case against that party because it had not yet "taken over AMA." (ECF No. 38.)

[2] As noted in the Statement of Facts below, Ortiz's vehicle was not a regular multi-passenger bus, but a small paratransit bus that seats only about eight qualified (i.e., elderly or disabled) passengers, who can use this special service to transport themselves to, for example, work or a medical appointment. (*See* ECF Nos. 58-12 through 58-18.)

bus she was driving in San Juan, Puerto Rico, caused Del Moral's eighty-seven year-old father, who was a regular passenger on the bus, to fall down and hit his head; that the father's head injury caused an epidural hematoma that led a physician to advise him to stop taking his anticoagulant medication; that the father's abstinence from the medication facilitated the growth of an embolic clot in his brain; that the clot caused the father to suffer a debilitating stroke approximately one month after his fall on the bus; and that the father's present condition has caused plaintiffs to suffer immense emotional harm. (ECF No. 1 at 4-6, 8-13.) On December 4, 2014, AMA and MAPFRE answered the complaint, substantively denying the allegations against them. (ECF No. 24). Meanwhile, Ortiz has not appeared before the court, despite having been deposed in San Juan, Puerto Rico, by plaintiffs on June 22, 2015.[3] (ECF No. 58-3.)

On July 27, 2015, following discovery, defendants moved the court for summary judgment on the ground that Ortiz did not act negligently while driving the bus on which Alberto Suria Campos ("Suria"), Del Moral's father, injured himself. (ECF No. 57-2 at 6-9.) Defendants appended to their motion a Statement of Uncontested Facts and several deposition excerpts. (ECF No. 57.) On August 3, 2015, plaintiffs opposed the motion, arguing that genuine disputes about material facts remain. (ECF No. 58.) Plaintiffs appended to their opposition a response to defendants' Statement of Uncontested Facts, an opposing Statement of Material Facts, and several exhibits of documentary, photographic, and depositional evidence. (ECF No. 58.) On August 5, 2015, plaintiffs

---

[3] Accordingly, all subsequent mentions of "defendants" will refer only to AMA and MAPFRE. But, because their liability is contingent on Ortiz's wrongdoing, if any, the court hereby notifies plaintiffs that this order and decision disposes of the case against all named defendants, including Ortiz. The court notes that the docket does not include proof of service for Ortiz.

moved to amend their response to defendants' Statement of Uncontested Facts.[4]  (ECF No. 61.)  On August 10, 2015, defendants replied to plaintiffs' opposition. (ECF No. 63.) On August 19, 2015, plaintiffs filed a sur-reply to defendants' motion. (ECF No. 69.) For the reasons below, the court grants defendants' summary judgment motion.

## II.
## **Summary Judgment Standard**

"Under Federal Rule of Civil Procedure 56(a), 'the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ins. Co. of Pa. v. Great Northern Ins. Co.*, 787 F.3d 632, 635 (1st Cir. 2015). "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015) (citing *Gerald v. Univ. of P.R.*, 707 F.3d 7, 16 [1st Cir. 2013]). "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *Kenney v. Floyd*, 700 F.3d 604, 608 (1st Cir. 2012) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 [1st Cir. 1995]).  When reviewing a summary-judgment motion, the court "assess[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in that party's favor." *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015) (quoting *Barclays Bank PLC v. Poynter*, 710 F.3d 16, 19 [1st Cir. 2013]).

---

[4] Upon due consideration, the court hereby grants the motion.  (ECF No. 61.)

### III.
### **Statement of Facts**

For several years prior to March 19, 2012, Suria had commuted from home to work and back again on a paratransit bus provided by AMA's Llame y Viaje service for disabled passengers.  (ECF Nos. 1 at 6, 24 at 3, 57-1 at 2, 57-2 at 3, 58-1 at 4, 58-2 at 1-3, 58-26 at 2-3, 63 at 6-7.)  Throughout those years, Ortiz normally served as the bus driver who would pick Suria up at his residence in Urbanización Altamira in San Juan and drive him to his office in the Tres Monjitas district in Hato Rey.  (ECF Nos. 1 at 6, 57-1 at 3, 57-2 at 2-3, 58-2 at 3, 58-26 at 3, 63 at 7.)  To qualify for this Llame y Viaje service, a commuter had to be disabled in some manner, but still able to walk on, in, and off the bus without assistance.  (ECF Nos. 57-1 at 3, 57-2 at 3, 58-1 at 1, 58-2 at 2-3, 63 at 6.)  Suria, for example, was partially blind due to age-related macular degeneration and so could not drive his own vehicle, but was otherwise healthy enough to work as the Executive Director for Food and Nutrition in Puerto Rico's Department of Education, a job that required him to visit "various facilities throughout Puerto Rico, supervising inventory and maintaining frequent communication with the United States Department of Agriculture." (ECF No. 1 at 4-6; see also ECF Nos. 57-1 at 3, 57-2 at 3, 58-2 at 2.)  Ortiz was aware of Suria's partial blindness.  (ECF Nos. 1 at 6, 24 at 3, 58-2 at 3, 58-26 at 3, 63 at 7.)

On the morning of March 19, 2012, Suria boarded Ortiz's bus, as usual, and sat in a seat.  (ECF Nos. 1 at 5-6, 58-2 at 1, 58-26 at 3.)  Before departing, Ortiz personally checked that Suria was wearing his seatbelt, as was her habit with each of her passengers.  (ECF Nos. 57-4 at 7, 58-1 at 3-4, 58-2 at 6.)  At some point during the commute to

Suria's office, the bus stopped at a red traffic light. For an unknown reason, Suria mistakenly believed that the bus had arrived at his office, so he stood up.[5] (ECF Nos. 1 at 5-6, 58-2 at 6-7, 58-26 at 3, 61 at 2.) When the light turned green and the bus suddenly started to move, Suria lost his balance, fell down, and hit his head. (ECF Nos. 1 at 6, 57-1 at 1, 57-2 at 2, 58-2 at 6-7, 58-26 at 3, 61 at 2.) Upon hearing a noise, Ortiz turned and saw Suria lying on the floor of the bus. (ECF Nos. 58-2 at 5.) Ortiz then accompanied Suria to the Auxilio Mutuo Hospital and called his wife for him, informing her that Suria had injured himself and was being treated at the hospital. (ECF Nos. 58-2 at 7, 63 at 8.)

Due to his fall, Suria developed a small epidural hematoma. (ECF Nos. 1 at 8, 58-26 at 3.) As a result, a physician advised him to stop taking his anticoagulant medication. Approximately one month later, Suria suffered a debilitating stroke caused by an embolic clot in the brain, the prevention of which had been a leading reason for his anticoagulant prescription. (ECF Nos. 1 at 4, 8-10; 58-26 at 3-4.) Suria's present condition, in the aftermath of his stroke, has caused plaintiffs, his eldest son and daughter-in-law, to suffer immense emotional harm.[6] (ECF No. 1 at 2, 12-13.)

---

[5] In her deposition, Ortiz testified that, immediately after he had fallen down, Suria told her that he had stood up to change seats. (ECF No. 57-4 at 6, 11, 15.) Accordingly, defendants assert that that is why Suria was not seated. (ECF Nos. 57-1 at 2; 57-2 at 2; 63 at 3, 5-6). Meanwhile, as noted in the text above, plaintiffs assert that Suria stood up because he erroneously thought the bus had arrived at his work. In his deposition, it appears that Suria no longer recalls the underlying incident on the bus. (ECF No. 57-3 at 7.) As a result, plaintiffs rely on hearsay statements made by Suria, while he was in the hospital on the day of the incident, to family members that relayed his reasons for standing up. (ECF 58-2 at 6-7.) Defendants convincingly challenge this evidence as inadmissible hearsay. (ECF No. 63 at 2.) Plaintiffs respond that Suria's statements are admissible as excited utterances. (ECF No. 69 at 2-4.) But the depositional evidence of the statements does not in any way describe them as excited. (*See* ECF Nos. 58-19 at 27, 58-20 at 10, 58-21 at 10-11, 58-22 at 5.) In any event, the court does not have to resolve this dispute because, in the end, Suria's motive for standing up is immaterial.

[6] Despite plaintiffs' claim that defendants' negligence was the proximate cause of Suria's present condition, the record is curiously silent about any claim having been brought by Suria himself in a local

## IV.

## Analysis

Plaintiffs have alleged against defendants emotional-harm claims under Article 1802 of the Puerto Rico Civil Code, a general negligence and tort statute, which provides: "A person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." *Díaz Aviation Corp. v. Airport Aviation Servs.*, 716 F.3d 256, 265 (1st Cir. 2013) (quoting 31 L.P.R.A. § 5141). "As the Puerto Rico Supreme Court has 'repeatedly recognized,' individuals who suffer distress because a relative or loved one is tortiously injured have a cause of action under Article 1802 against the tortfeasor." *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 57 (1st Cir. 2009) (quoting *Santini Rivera v. Serv Air, Inc.*, 1994 P.R.-Eng 909,527 [P.R. 1994], No. RE-93-232). "To prevail on such a theory, a plaintiff must prove (1) that he has suffered emotional harm, (2) that this harm was caused by the tortious conduct of the defendant toward the plaintiff's relative or loved one, and (3) that the defendant's conduct was tortious or wrongful." *Id.* (citing *Santini Rivera*, supra). "The cause of action is derivative and depends on the viability of the underlying claim of the relative or loved one." *Id.* (citing *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 12-13 [1st Cir. 2007]).

Here, defendants argue that they merit judgment as a matter of law because the present record cannot support a finding that Ortiz acted negligently while driving the bus. The parties all agree that Suria fell down on the bus and injured himself. And Suria's

---

court. Instead, the court is presented only with the derivative claims of family members living more than one thousand miles away from the scene of the initial accident.

subsequent health complications, including his stroke, have indeed been tragic. But to hold defendants liable for Suria's injuries and plaintiffs' emotional harms, defendants must have been negligent toward Suria through either an act or omission. For the following reasons, the court agrees that defendants are entitled to summary judgment.

On the issue of negligence, plaintiffs claim that Ortiz breached her duty to ensure, before accelerating the bus after it had "stopped at a traffic light," that "all her passengers were properly and safely seated." (ECF No. 58-26 at 4; *see also* ECF Nos. 1 at 7; 58-1 at 3; 58-26 at 3, 11-12, 16.) But that claim must fail because, under Puerto Rico law, Ortiz did not owe her passengers such a duty.

In *Widow of Blanco v. Metropolitan Bus Authority*, 89 P.R.R. 722 (1963), the plaintiff fell to the floor of an AMA bus injuring herself, when the bus "started suddenly" and threw her "off balance." *Id.* at 724-25. When the plaintiff sued AMA in tort, the trial court held that AMA was not liable for her injuries. On appeal, the Puerto Rico Supreme Court unanimously affirmed the trial court's judgment, holding that, even though AMA had owed the plaintiff "the highest degree of care and prudence," there was nothing tortious about the bus driver's sudden acceleration. *Id*. The Court found that the sudden and unexpected "starting or lurching" of a bus is a "common and usual incident[] of modern transportation which every passenger should know and anticipate." *Id*. at 724. And, responding to the plaintiff's suggestion that the driver had acted negligently by failing to "wait until each and all of the passengers [were] seated before proceeding" to accelerate the bus from a full stop, the Court held that, despite the duty of "special care or

treatment" owed to the plaintiff, the driver did not have a "duty to maintain [the bus] at a standstill until the [plaintiff was] seated." *Id.* at 724-25.

The Puerto Rico Supreme Court's binding decision in *Widow of Blanco* forecloses plaintiffs' claims. Nothing in the record indicates that the sudden acceleration at issue here was any different than the one in *Widow of Blanco*. In their Statement of Material Facts, plaintiffs allege that Suria fell down when the bus either "took off," "accelerated," or "started to move." (ECF No. 58-2 at 6-7). In *Widow of Blanco*, the plaintiff similarly alleged that she fell when the bus "started suddenly and [she] was thrown off balance" because she "*did not expect that jerk*" of the bus. 89 P.R.R. at 725 (emphasis in original). Since the underlying incidents were virtually the same, the Court's ruling in *Widow of Blanco* applies here as well: Even if unexpected by a passenger, such sudden "starting[s] or lurching[s]" of a bus are not tortious because they are "common and usual incidents of modern transportation which every passenger should know and anticipate." *Id*. at 724.

Moreover, if, in exercising "the *highest* degree of care and prudence," the driver in *Widow of Blanco* did not owe the widow a duty of ensuring that every passenger on the bus was properly seated before proceeding from a full stop, the driver here did not owe Suria that duty either. *Id.* (emphasis added). Plaintiffs nonetheless assert that Ortiz owed Suria a greater duty than the one established in *Widow of Blanco* because of a federal regulation, promulgated under the Americans with Disabilities Act of 1990, for "fixed route" public-transportation systems. (ECF No. 58-26 at 5) (quoting 49 C.F.R. § 37.167[b][1]). But that regulation does not apply here because AMA's Llame y Viaje service is not a "fixed route" system, but a "demand responsive" one. *See* 49 C.F.R.

§ 37.3 (defining and distinguishing those two types of public-transportation system); *see also Rhode Island Handicapped Action Committee v. Rhode Island Public Transit Authority*, 718 F.2d 490, 491-92 (1st Cir. 1983) (distinguishing between buses running on a "fixed route system" and "paratransit services" that "provide door-to-door transportation"). As the name "Llame y Viaje" (in English, "Call and Ride") implies, Ortiz provided Suria with door-to-door service from home to work because Suria had called to request the service, not because AMA had independently "prescribed" a bus to run along that "route according to a fixed schedule." 49 C.F.R. § 37.3 (defining a "fixed route" system for purposes of 49 C.F.R. § 37.167[b][1]); *see also* ECF No. 63 at 7 (defendants' declaration that the AMA bus at issue here was not operating on a fixed-route system). Thus, contrary to plaintiffs' assertion, the duty of care that defendants owed to Suria remains that "highest degree of care and prudence" that the Puerto Rico Supreme Court established in *Widow of Blanco*. *See* 89 P.R.R. at 724. And, as explained above, plaintiffs have failed to proffer any competent evidence to show that defendants breached that particular duty.

Plaintiffs underscore that Ortiz stated in her deposition that, had she known Suria had stood up from his seat, she would not have left the traffic light. (ECF Nos. 58-2 at 5-6, 58-26 at 11.) But, the mere fact that knowing the injuries Suria has suffered because of his fall Ortiz would have extended to him an inordinate and legally-superfluous degree of care, does not convert her otherwise acceptable driving into negligence. "[O]ne must possess a duty before one can breach it," and plaintiffs have "not pointed to authority

showing that [defendants] owed [Suria] a duty beyond" the one set forth in *Widow of Blanco*. *See Sullivan v. Young Bros. & Co.*, 91 F.3d 242, 253 (1st Cir. 1996).

Plaintiffs nonetheless insist that, because Ortiz knew that Suria was partially blind, she owed him the additional duty of ensuring that he was properly seated whenever she moved the bus away from a traffic stop.[7] (ECF Nos. 58-26 at 14-16.) But nothing in the record indicates that, throughout their lengthy acquaintance, Ortiz ever had cause to be concerned that Suria would remove his seatbelt and stand up while her bus was in traffic. Partial blindness, after all, does not rob someone of Suria's status of the knowledge that one should not remove one's seatbelt and move about a bus while it is still in traffic. (*See* ECF No. 58-1 at 2.) And, as Ortiz explained in her deposition, her passengers generally understood that, once she had secured their seat belt, they were to remain seated and buckled in until she had announced the bus' arrival at their pre-agreed destination.[8] (ECF No. 57-4 at 7, 15.) Thus, it does not make sense for plaintiffs to argue that Ortiz had an

---

[7] In support of this position, plaintiffs, instead of focusing on Puerto Rico law, devote themselves to cases interpreting the local law in states like California, New Jersey, Pennsylvania, and South Carolina. (ECF Nos. 58-26 at 14-16.) Of course, those cases cannot detract from the Puerto Rico Supreme Court's authoritative pronouncement, in *Widow of Blanco*, of the duties owed by AMA bus drivers to their passengers under the "highest degree of care and prudence" in Puerto Rico law. 89 P.R.R. at 724.

[8] Plaintiffs attempt to controvert this factual assertion by pointing to Suria's statement in his deposition that nothing would happen when he arrived at work on the bus. (ECF No. 58-1 at 2.) But, when read in context, that statement is not only vague, but clearly unreliable. (ECF No. 58-23 at 17.) Immediately after making that statement, Suria claimed that, around the time of the underlying incident, his vision was "[f]ine," and he was not partially blind. (ECF No. 58-23 at 18.) Shortly thereafter, Suria stated that "[n]othing" happened to him on March 19, 2012 (the day of the incident), and that he did not remember falling down in the bus or having ever fallen down anywhere. (ECF No. 58-23 at 20.) Accordingly, plaintiffs have failed to properly controvert the assertion, and the court deems it admitted. *See* Local Rule 56(e) (court may deem submitted fact admitted if not properly controverted).

additional duty, while driving in traffic, to routinely distract her attention away from the road to verify that all of her passengers were still properly and safely seated.[9]

Finally, plaintiffs have not brought to the court's attention any genuine dispute of material fact that might warrant a trial. *See Carreras v. Sajo*, 596 F.3d 25, 31-32 (1st Cir. 2010) (explaining the court's "anti-ferret rule" under Local Rule 56); *see also Borges v. Serrano-Isern*, 605 F.3d 1, 5-6 (1st Cir. 2010) (same); Local Rule 56(e) ("The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.")

## V.
## **Conclusion**

In sum, because plaintiffs cannot sustain the negligence element of their claims, defendants are entitled to judgment as a matter of law. Accordingly, the court hereby **GRANTS** defendants' motion for summary judgment. (ECF No. 57.) As noted above, the court also **GRANTS** plaintiffs' motion to amend their opposition. (ECF No. 61.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 4th day of September, 2015.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE

---

[9] Plaintiffs suggest that Ortiz could have easily integrated this additional duty into her urban bus route by using the rearview mirror above the steering wheel to routinely monitor her passengers. (ECF No. 58-26 at 16.) But photographs of the bus show that the mirror was too small and narrow to provide Ortiz with a clear view of the wide passenger-seating area. (ECF No. 58-14.) Indeed, based on its size and placement, the mirror appears to be intended to give the driver only a view, through the bus' rear glass door, of the road behind her. (ECF No. 58-13.)